UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEVANTE HUNTER

         Plaintiff,

    v.

MHS CONVEYOR CORP., MHS HOLDINGS
LLC, ERMANCO CONVEYOR INC., and TGW
SYSTEMS INC.,

         Defendants.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

# C O M P L A I N T

Plaintiff JeVante Hunter alleges the following for his complaint against Defendants MHS Conveyor Corp., MHS Holdings LLC, Ermanco Conveyor Inc., and TGW Systems Inc.

## NATURE OF THE CASE

1.     This is an employment case about race-based harassment and discrimination, as well as retaliation. Plaintiff JeVante Hunter worked for Defendants where his supervisor was a well-known white supremacist—who even had a swastika tattoo—and who harassed Hunter and discriminated against him because of his race (black).

2.     Defendants' racist, white supremacist supervisor threatened Hunter by telling him he was going to "hunt him down" and kill him, and he also called Hunter "boy" and threw things

at him at work.

3.     Hunter reported the threats and racism that he endured, but Defendants failed to take Hunter's complaints seriously and the supervisor's harassment and discrimination continued largely as it had before.

4.     This left Hunter with a choice of either working under the threat of being murdered by a white supremacist or resigning his employment.  He chose to resign.

5.     Defendants' conduct violates Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act, and the Civil Rights Act of 1866.  Hunter suffered damages as a result of Defendants' statutory violations that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff JeVante Hunter is an individual person who resides in Muskegon County, Michigan.  Hunter worked for Defendants at their production facilities located in Norton Shores, Michigan from June 2017 until March 2023.

7.     Defendant MHS Conveyor Corp. is a corporation organized under the laws of the State of Delaware.  Defendant MHS Holdings LLC is a limited liability company organized under the laws of the State of Michigan.  Defendant Ermanco Conveyor Inc. is a corporation organized under the laws of the State of Michigan.  Unless otherwise noted, the complaint refers to Defendants MHS Conveyor Corp., MHS Holdings LLC, and Ermanco Conveyor Inc. collectively as "MHS Conveyor."

8.     Defendant TGW Systems Inc. is a corporation organized under the laws of the State of Michigan.  The corporation owned and operated two production facilities located in Norton Shores until March 2021.

9.     MHS Conveyor now operates the production facilities in Norton Shores.  MHS Conveyor purchased the Norton Shores facilities from Defendant TGW Systems Inc. in 2021.

10.     MHS Conveyor operates the same production facilities in Norton Shores that TGW Systems operated before the purchase with no interruption of business operations.  MHS Conveyor hired all of TGW Systems' production employees, including its supervisory employees.  None of the jobs or working conditions for employees changed after MHS Conveyor's purchase.  Employees at the Norton Shores facilities used the same machinery, equipment, and production methods after the purchase as they did before the purchase, and the product remained the same as well.

11.     From the employees' perspective working at the Norton Shores' facilities, almost nothing changed as it relates to their jobs except for the sign on the outside of the buildings and the entity signing their paychecks.

12.     The Court has personal jurisdiction over Defendants under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

13.     The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law.  Title VII also independently provides for subject matter jurisdiction in the federal courts. 42 U.S.C. § 2000e–5(f)(3); 42 U.S.C. § 3613(a)(1)(A).

14.     The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

15.    Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

### GENERAL ALLEGATIONS

16.    Defendants design, produce, and manufacture material handling equipment such as conveyor systems, sorting equipment, and robotic production equipment.

17.    Hunter worked for Defendants at their production facilities in Norton Shores from June 2017 until March 22, 2023.

18.    Hunter's race is black.

19.    Hunter's supervisor (Frederick Kaiser) is a white male who was a well-known racist and white supremacist.

20.    Kaiser harbored racist and discriminatory views toward black people, and everyone knew that in the workplace—including upper level managers.  Kaiser even had a swastika tattoo to make it clear to anyone and everyone that he was a racist and a white supremacist.

21.    Because of this, as a black person, Hunter already feared Kaiser.

22.    In late February 2020, Kaiser threatened Hunter and said that he (Kaiser) was going to "hunt him down" and kill Hunter.

23.    Kaiser would also frequently call Hunter "boy" and other racially derogatory terms, and he would then also throw things at Hunter while at work.

24.    Hunter complained to Defendants' human resources department about Kaiser's misconduct and Defendants moved Kaiser to a different work area, but Kaiser continued to come back into Hunter's work area where he would threaten and menace him.

25.    Hunter continued to complain to Defendants' human resources department on several occasions, but Defendants refused to take his complaints seriously or make any sincere at-

tempts to protect Hunter from their racist, white supremacist supervisor who had threatened to kill Hunter and then continued to threaten and menace him.

26.    Fearing for his life on a daily basis, Defendants' discrimination, harassment, and retaliation toward Hunter left him with no choice but to resign his employment.

27.    Hunter filed a charge of discrimination with the United States Equal Employment Opportunity Commission where he named MHS Conveyor and TGW Systems as respondents, and he has otherwise satisfied all administrative prerequisites to filing his causes of action.

## COUNT 1

### DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28.    Hunter repeats and incorporates all the previous allegations in his complaint.

29.    Defendants subjected Hunter to different terms and conditions of employment because of his race.

30.    Defendants constructively terminated Hunter's employment.

31.    Hunter's race was a motivating factor in Defendants' decision to treat him differently in connection with the terms and conditions of his employment and the decision to constructively terminate his employment.

32.    Hunter suffered damages as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 2

### RETALIATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

33.    Hunter repeats and incorporates all the previous allegations in his complaint.

34.    Hunter engaged in activity protected by Title VII when he, among other things,

- 5 -

opposed the discrimination that he endured in Defendants' workplace.

35.    Defendants knew about Hunter's opposition and protected activity.

36.    Defendants treated Hunter differently in connection with the terms and conditions of his employment and they constructively terminated his employment.

37.    Defendants would not have taken these adverse actions against Hunter but for his protected activity.

38.    Hunter suffered damages as a result of Defendants' violations of Title VII, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 3

### HARASSMENT IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

39.    Hunter repeats and incorporates all the previous allegations in his complaint.

40.    Hunter was subjected to communications and conduct based on his race.

41.    The communications and conduct were hostile and unwelcome.

42.    Hunter was subjected to a hostile work environment and otherwise treated differently than other employees because of his race.

43.    Defendants were legally responsible for the work environment that was hostile to Hunter because of his race.

44.    The hostile work environment Hunter endured was so severe or pervasive so as to alter the terms and conditions of his employment by creating a hostile and abusive working environment.

45.    Defendants knew about the conduct Hunter was subjected to and failed to implement reasonably prompt and appropriate corrective actions to end the harassment, and they also

actively encouraged the creation of the hostile and abusive working environment.

46.    Hunter suffered damages as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 4

### DISCRIMINATION IN VIOLATION OF
### MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

47.    Hunter repeats and incorporates all the previous allegations in his complaint.

48.    Defendants subjected Hunter to different terms and conditions of employment because of his race.

49.    Hunter's race was one of the motives or reasons that made a difference in Defendants' decision to treat him differently in connection with the terms and conditions of his employment and the decision to constructively terminate his employment.

50.    Hunter suffered damages as a result of Defendants' violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 5

### RETALIATION IN VIOLATION OF MICHIGAN'S
### ELLIOTT-LARSEN CIVIL RIGHTS ACT

51.    Hunter repeats and incorporates all the previous allegations in his complaint.

52.    Hunter engaged in activity protected by Michigan's Elliott-Larsen Civil Rights Act when he, among other things, opposed the discrimination that he endured in Defendants' workplace.

53.    Defendants knew about Hunter's opposition and protected activity.

54.    Defendants treated Hunter differently in connection with the terms and conditions

- 7 -

of his employment and they constructively terminated his employment.

55.    There was a causal connection between Hunter's protected activity and the adverse employment actions Defendants took against him.

56.    Hunter suffered damages as a result of Defendants' violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 6

### HARASSMENT IN VIOLATION OF
### MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

57.    Hunter repeats and incorporates all the previous allegations in his complaint.

58.    Hunter was subjected to communications and conduct based on his race.

59.    The communications and conduct were hostile and unwelcome.

60.    Hunter was subjected to a hostile work environment and otherwise treated differently than other employees because of his race.

61.    Defendants were legally responsible for the work environment that was hostile to Hunter because of his race.

62.    The hostile work environment Hunter endured was so severe or pervasive so as to alter the terms and conditions of his employment by creating a hostile and abusive working environment.

63.    Defendants knew about the conduct Hunter was subjected to and failed to implement reasonably prompt and appropriate corrective actions to end the harassment, and they also actively encouraged the creation of the hostile and abusive working environment.

64.    Hunter suffered damages as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory

- 8 -

damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 7

### DISCRIMINATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866

65.     Hunter repeats and incorporates all the previous allegations in his complaint.

66.     Hunter's race is black.

67.     Defendants constructively terminated Hunter's employment.

68.     Hunter's race was a motivating factor in Defendants' decision to treat him differently in connection with the terms and conditions of his employment and the decision to constructively terminate his employment.

69.     Hunter suffered damages as a result of Defendants' violations of Title 42 of the United States Code, Section 1981, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 8

### RETALIATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866

70.     Hunter repeats and incorporates all the previous allegations in his complaint.

71.     Hunter engaged in activity protected by Title 42 of the United States Code, Section 1981, when he complained to Defendants and opposed the discrimination he encountered in Defendants' workplace.

72.     Defendants knew about Hunter's protected activity.

73.     Defendants constructively terminated Hunter's employment.

74.     Defendants would not have taken these adverse actions against Hunter but for his protected activity.

75.     Hunter suffered damages because of Defendants' retaliation that include, but are

not limited to, lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

## COUNT 9

### HARASSMENT IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866

76.     Hunter repeats and incorporates all the previous allegations in his complaint.

77.     Hunter was subjected to communications and conduct based on his race.

78.     The communications and conduct were hostile and unwelcome.

79.     Hunter was subjected to a hostile work environment and otherwise treated differently than other employees because of his race.

80.     Defendants were legally responsible for the work environment that was hostile to Hunter because of his race.

81.     The hostile work environment Hunter endured was so severe or pervasive so as to alter the terms and conditions of his employment by creating a hostile and abusive working environment.

82.     Defendants actively encouraged the creation of the hostile and abusive working environment.

83.     Hunter suffered damages as a result of Defendants' harassment and violations of Title 42 of the United States Code, Section 1981, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## JURY DEMAND

84.     Hunter demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

85.     Plaintiff JeVante Hunter requests that the Court enter a judgment in his favor and

- 10 -

against Defendants MHS Conveyor Corp., MHS Holdings LLC, Ermanco Conveyor Inc., and TGW Systems Inc. in an amount that will fully and fairly compensate him for all of his damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

86.     Hunter also requests that the court grant him any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

JEVANTE HUNTER

Dated:  December 22, 2023

By:    /s/  Mark S. Wilkinson

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com